(114 So. 53)

## LOUISVILLE & N. R. CO. v. MALCHOW.
(6 Div. 884.)

Supreme Court of Alabama. April 7, 1927.

Rehearing Granted June 30, 1927. Rehearing Denied Oct. 27, 1927.

1. **Adverse possession ⟨⟩8(4)—Railroad, in absence of statute, may be divested of right of way by adverse possession.**

In the absence of statute providing otherwise, railroad company may by adverse possession for prescriptive period be divested of its right of way.

2. **Adverse possession ⟨⟩60(6)—Occupation of part of right of way on which railroad has easement by owner of servient estate until needed for railroad is presumptively permissive.**

Where railroad right of way is only easement, occupation of part of it by owner of servient estate until it is needed for railroad is presumptively permissive, and statute of limitation begins to run only from time when railroad has notice of hostile claim.

3. **Courts ⟨⟩97(5)—Whether railroad lost proprietary right in land granted by United States is "federal question" (Acts Cong. June 3, 1856 [11 U. S. Stat. 17, 18], March 3, 1871 [16 U. S. Stat. 580]).**

Question whether railroad company may be held to have lost its proprietary right in strip of land within right of way granted by United States by Acts Cong. March 3, 1871 (16 U. S. Stat. 580), June 3, 1856 (11 U. S. Stat. pp. 17 and 18), is a "federal question," and state court

in determining such question is bound by decisions of federal courts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Federal Question.]

4. **Highways ⟨⟩68—Evidence as to adoption or maintenance as public road divesting grant of railroad right of way by federal government must show clear and unequivocal act.**

Grant of right of way to railroad by federal government in fee, with reverter in case not sold to settlers, can only be divested by state in the exercise of its police power, and, to raise presumption of exercise of such power, evidence must show some clear and unequivocal act on part of competent authority amounting to explicit manifestation to adopt or maintain locus in quo as public road.

5. **Highways ⟨⟩68—Evidence held not to show state had set apart as public highway portion of railroad right of way granted by federal government in fee with provision for reverter (Acts Cong. June 3, 1856 [11 U. S. Stat. 17, 18] March 3, 1871 [16 U. S. Stat. 580]).**

In action against railroad company for damages for cutting pipe line located on its right of way, evidence held not to justify conclusion that state or any of its governmental agencies had undertaken to set apart to public use as highway such portion of right of way, sufficient to authorize divesting railroad thereof, where grant was by United States under Acts Cong. March 3, 1871 (16 U. S. Stat. 580), June 3, 1856 (11 U. S. Stat. 17, 18), granting such right of way in fee with provision for reverter.

Appeal from Circuit Court, Cullman County; James E. Horton, Judge.

Action for damages by Ernst Malchow against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded on rehearing.

Eyster & Eyster, of Albany, A. A. Griffith, of Cullman, and Joel B. Brown and George W. Jones, both of Montgomery, for appellant.

The act of Congress, granting to the railroad company a right of way over public lands, vested in the railroad company the title in fee to a strip 100 feet in width on each side of the main line or track. An easement for a public highway thereon could not be acquired by the public by prescription. Mo. R. Co. v. Roberts, 152 U. S. 114, 14 S. Ct. 496, 38 L. Ed. 377; Rio Grande West R. Co. v. Stringham, 239 U. S. 44, 36 S. Ct. 5, 60 L. Ed. 136. The federal decisions control the question in this case. Kansas Pac. R. Co. v. Atchison, etc., R. Co., 112 U. S. 414, 5 S. Ct. 208, 28 L. Ed. 795; 12 Rose's Notes, 764. The grant to the railroad was not for private use or disposal, but only the public use named in the act, and the railroad did not lose its rights so granted by laches or local statutes of limitation. Great Northern R. Co. v.

Steinke, 261 U. S. 119, 43 S. Ct. 316, 67 L. Ed. 564. Those acquiring title to public lands over which a right of way has been granted take subject to such grant. S. A. L. v. Trustees (Fla.) 108 So. 689, 46 A. L. R. 872. There is a distinction between grants for rights of way and grants in aid of construction. S. A. L. v. Trustees, supra; 22 R. C. L. 290, 298. Use of the land by the public would not constitute a dedication. H. A. & L. D. Holland Co. v. Nor. Pac. (D. C.) 208 F. 598; Id. (C. C. A.) 214 F. 921. The use of the street was not adverse to the railroad company and could not constitute adverse possession against the railroad company's rights thereto. S. A. L. v. Banks, 207 Ala. 194, 92 So. 117; Alex. City v. C. of Ga., 182 Ala. 516, 62 So. 745.

Emil Ahlrichs and F. E. St. John, both of Cullman, for appellee.

Counsel discuss the questions raised and cite S. & N. A. v. Mauter, 202 Ala. 326, 80 So. 408; L. & N. v. Mauter, 203 Ala. 237, 82 So. 487.

SAYRE, J. Plaintiff (appellee) sued to recover damages, for that defendant (we quote from original count 5 of the complaint), "acting through its agents and servants, * * * wrongfully * * * cut the pipe line of plaintiff which carried water from the waterworks of the city of Cullman, Ala., to his factory," etc., and was allowed to recover in the trial court.

Plaintiff's contention was that the pipe line had been laid for its own use by the Cullman Coal & Coke Company, and that he had purchased the line from that company. And, further, plaintiff contended that the traveled way along the course of which the pipe line was laid had by long user been converted into a public way, and that, if defendant's right of way—acquired under acts of Congress, to be presently stated—was subject to divestiture by adverse user, the evidence warranted a submission to the jury of the issue made by this contention of plaintiff and its denial by defendant. The evidence leaves no room for doubt that defendant's right of way on its western border was originally coterminous with the eastern boundary of plaintiff's property. Defendant's right of way extended 100 feet on either side of the center of defendant's track, until 1912 or thereabouts a single track. The road claimed by plaintiff to be a public road ran along and over the western margin of defendant's right of way as originally located. In recent years defendant's line has been double tracked, but that fact does not appear to have affected the question at issue between these parties. There was palpable conflict in the evidence, but that for plaintiff tended to show a general use by the public of the roadway in question. This user, according to plaintiff's contention and the evidence in support thereof, commenced 35 or 40 years before this action commenced, and lasted continuously during the time, though, evidently, the use of the road has not been so extensive in recent years as formerly. A number of buildings, residences, had their outlook on, and means of ingress and egress to and from, the road in close proximity to plaintiff's property.

[1, 2] At first we thought, and so wrote, that the evidence for plaintiff made the question of the establishment of the road as a public way by implied grant or dedication, thus excluding the proprietary right asserted by defendant, one for decision by the jury, citing Rosser v. Bunn, 66 Ala. 89, and Locklin v. Tucker, 208 Ala. 155, 93 So. 896; these decisions being considered sufficient for the case in hand. And now, on reconsideration, we find our first opinion fortified by the great weight of authority to this effect, in the absence of statute providing otherwise: A railroad company may by adverse possession for the prescriptive period be divested of its right of way. Mobile & Girard R. Co. v. Rutherford, 184 Ala. 204, 63 So. 1003, and 2 C. J. 225, 226, where many cases are cited; 22 R. C. L. 868. The decisions in Alexander City Union Warehouse & Storage Co. v. Central of Georgia R. Co., 182 Ala. 516, 62 So. 745, and Seaboard Air Line Ry. v. Banks, 207 Ala. 194, 92 So. 117, cited by appellant, defendant, are to be explained upon the principle that, where a railroad right of way is only an easement, occupation of a part of it by the owner of the servient estate until it is needed for the railroad is presumptively permissive, and the statute of limitation begins to run only from the time when the railroad company has notice of the hostile claim.

[3] But defendant's right of way was granted by the United States in 1871 (16 U. S. Stat. at Large, p. 580), and, in aid of its construction, alternate sections, odd numbered sections (as the reference to the act of 1856, 11 Stat. at Large, pp. 17 and 18, shows) were granted in fee, with reverter in case not sold to settlers. The locus in quo is in section 10. The question whether the defendant company may be held to have lost its proprietary right in the strip of land in which the pipe line claimed by plaintiff was laid is a federal question, and as to it we are bound by the decisions of the federal courts.

Speaking of a grant to the Northern Pacific Railroad Company in every essential particular like the grant under which defendant holds its right of way, the Supreme Court of the United States has said that the grant of the right of way was "in effect the grant * * * of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is

evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use, would be to allow that to be done by indirection which could not be done directly, for, as said in Grand Trunk Railroad v. Richardson, 91 U. S. 454, 468 [23 L. Ed. 356], 'a railroad company is not at liberty to alienate any part of its roadway so as to interfere with the full exercise of the franchise granted.'" Northern Pacific Railway v. Townsend, 190 U. S. 267, 23 S. Ct. 671, 47 L. Ed. 1044. And the court quotes from Northern Pacific Railroad v. Smith, 171 U. S. 260, 275, 18 S. Ct. 799 (43 L. Ed. 157), as follows:

"By granting a right of way four hundred feet in width [in this case two hundred feet] Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance."

However, the court, in Northern Pacific Railway v. Townsend, supra, by way of limiting the effect of its previously expressed opinion, said:

"Of course, nothing that has been said in anywise imports that a right of way granted through the public domain within a state is not amenable to the police power of the state. Congress must have assumed when making this grant, for instance, that in the natural order of events, as settlements were made along the line of the railroad, crossings of the right of way would become necessary, and that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed. But such limitations are in no sense analogous to claim of adverse ownership for private use."

The conclusions of the Supreme Court of the United States in this regard have been consistently followed by that court in other cases. Rio Grande Western R. Co. v. Stringham, 239 U. S. 47, 36 S. Ct. 5, 60 L. Ed. 136, and cases there cited; Kern River Co. v. United States, 257 U. S. 147, 42 S. Ct. 60, 66 L. Ed. 175.

The grant to defendant provided in the acts of 1856 and 1871, supra, so far as we are informed, have not been limited by subsequent act of Congress, nor has a forfeiture of any part of the right of way granted ever been declared.

[4, 5] Let it be noted that plaintiff has shown no ownership of the locus in quo, but claims that defendant has lost its proprietary rights by an adverse prescription in favor of the public, and so has no right to treat the pipe line as the property of a trespasser, which, by the trespasser's wrong, has become a part of the soil. The question then is whether defendant has lost its proprietary rights to the public by prescription. There is no evidence that the alleged way was established or has been recognized as a highway by the order of any competent public authority. It is commonly deemed not improper to say that a highway may exist by prescription, which in such case is based on the prescription growing out of an antecedent exercise of the power of the state by the proper authorities. Rosser v. Bunn, supra; Cross v. State, 147 Ala. 125, 41 So. 875; Harper v. State, 109 Ala. 66, 19 So. 901; 37 Cyc. 18. Whatever may be said concerning the question of a presumed dedication of a part of a railroad right of way in cases of private grant, purchase, or condemnation, consideration of the federal adjudications has led us to conclude that the grant of a right of way by the federal government, in terms like the grant in the present case, can only be divested by the state in the exercise of its police power, and that, to raise a presumption of the exercise of that power, the evidence must show some clear and unequivocal act (Hoole v. Attorney General, 22 Ala. 196) on the part of competent authority amounting to an explicit manifestation on the part of such authority to adopt or maintain the locus in quo as a public road. There was no evidence sufficient to warrant a conclusion of that sort. Plaintiff's witness Tillery lived eight miles north of the locus in quo, and was allowed to testify that as a road hand he had in former years worked the road in his neighborhood—this in effect. Perhaps from this and other testimony in the cause the jury were authorized to infer that the road where witness worked was a continuation, so far as concerned convenient passage to the north, but the court is of opinion this evidence did not suffice to justify the conclusion that the state or any of its governmental agencies had ever undertaken to set apart to public use as a highway that part of the railroad right of way, the locus in quo, eight miles to the south, and hence that the defendant was due the general affirmative charge requested by it.

In view of the conclusion aforestated, there is no need to discuss the subsidiary questions of pleading and evidence the defendant has sought to raise on this appeal.

We have carefully examined the case of Seaboard Air Line R. Co. v. Board of Trustees, etc. (Fla.) 108 So. 689, 46 A. L. R. 870, in which court and counsel seem to have cited all the relevant cases; but that case is not in point, for, while there was a subsequent grant by the federal government, the result turned at last upon a grant by the state of Florida. In that case the court reached what appears to be a compromise between the contentions made by the parties: It held, under the Florida grant, that, until the railroad company asserted its exclusive proprietorship of its right of way for use in its business, its use as a highway will not be restrained. But that ruling does not afford a solution of the question here presented.

On reconsideration the judgment in the trial court is reversed, and the cause remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.